Oral argument not to exceed 15 minutes per side. Mr. Waringa for the petitioner appellate. Good morning. I'll be reserving four minutes for rebuttal. May it please the court, my name is Brett Waringa and I'm here on behalf of Dorreon McBride. My client, Mr. McBride, petitioned for habeas relief right after the end of state court proceedings. When the district court case concluded two years later, his one-year statute of limitations for pursuing habeas relief had rotted. If the dismissal stands in this case, Mr. McBride would lose his right to habeas relief forever for timely filed, exhaustive claims. That was not the Supreme Court's intent and not Congress's intent. When the complaint was dismissed, there was still time to refile the exhaustive claims, correct? That's correct. That's the hardest fact in the case, in my opinion, for you. If the time had run at that point, so your client truly was barred, couldn't refile, there's some helpful cases on that. But he had three months in which case he could have filed the two exhaustive claims. That's true. He still had some time left at that stage of the case. He had three months left. Even so, I think when you look at the language in Rhymes, that looks to whether the right would be unreasonably impaired, the language that this court has used, which is whether the right's in jeopardy. What's your best case from the Sixth Circuit showing that the district court made a statement, I believe, to stay the case instead of dismissal? You've got a good case, pardon? Yes, I think that the string of Sixth Circuit cases we cited where the Sixth Circuit sends it back to the district court for consideration on a stay or a deletion, starting with Robinson and working backwards. Some of those cases are pre-Rhymes. How useful are those? The pre-Rhymes cases are still useful to the extent that they adopt the same. Basically, the pre-Rhymes cases all tend to stem from Justice Stevens' concurrence in Duncan. And then the Supreme Court case in Rhymes ultimately picks up on one of the lower court cases under that pattern. So you're saying it's vindicated the line of cases? It did. I'm not sure about that, I guess. I mean, Rhymes seems to—Rhymes doesn't use mandatory language, right? It says should, you know. I mean, they're—the stay and the bans process is a limited circumstance. There are certain things that would have to be looked at. But I guess the problem is your client, in addition to kind of having the three months, I mean, your client really didn't raise that argument in front of the district court either. I mean, they made an exhaustion argument, and your client didn't say, well, hey, just delete my non-exhaustive claims, or hey, can you stay this, or whatever it is. I mean, it doesn't make any argument at all. It just says he exhausted, right? That's true. Up until that point, up until the dismissal order, my client received a pro se, it was very focused on exhaustion. So I have two points in response. First, just 11 days after the district court case determined that there was an exhaustion problem, he did raise Rhymes. So the court was put on alert that he wanted to stay. And second, this court has not been bothered when petitioners address the disposition of an unexhausted claim after a court has already determined that the claim is exhausted. So, for instance, in Wagner, there was no request for a stay. This court remanded under Rhymes to Esponte. In Banks, in footnote 7, the court says, sure, you didn't ask for a stay until oral argument in the Sixth Circuit. But it's not forbidden. So the fact that he, the fact that this pro se petitioner didn't argue any alternative under Rhymes is just a bar that this court hasn't set and doesn't apply. Doesn't this sort of put the district court job in the role of not only judge, but sort of counselor or advocate? I mean, you're blaming the district court. There were tools available to the district court, a number of tools, but your client didn't ask. So this seems to put that some obligation on district courts to make sure they're clear about all the options available and then properly advise the petitioner which one they may want. There's definitely no duty to advise the petitioner. But there is a duty on district courts to apply the law that governs a particular claim. And in this case, there's nothing wrong with it. He probably dismissed the petition because there was no exhaustive claim. So follow the law. Right. But dismissal, we don't have authority that makes you dismissal the default option. We know that courts can't adjudicate these kinds of petitions. Well, it has options. It does have options. You're saying only one option here, essentially. The district court didn't evaluate their options here. It should have. It should have looked at the records. If it had said, ah, I have four options. I'm going to do this one, you wouldn't be here. It's only because the district court didn't do our analysis and threw all the options. That's right. If the district court had looked at its options and said, after considering them, I choose dismissal for X, Y, Z reasons, we wouldn't be here. OK. But what about the fact that Judge Hood, OK, Judge Hood is Judge Hood in this case, right? Experienced district judge. I'm sure we can find multiple cases where she's granted stays. She's probably dismissed. She's probably done all four of the options, right? Can't we just infer that she would have considered them then? I mean, she's been on the bench for a long time. She didn't suddenly forget what the options were in this kind of situation. I think if the state hadn't said explicitly that the court must dismiss in this case, I wouldn't fight the presumption that Judge Hood knows the law in this area. But when the state said, you must dismiss this case, and the court's order just said, there's no adjusted claim motion granted. So she said, wow, there's 20 cases that I decided. All those other cases are totally wrong. I only have the option to dismiss. No. I'm doing it right now. Thank you for educating me. No. I think in this court, in this case, you would just have to say she's dismissed. That she should be. I mean, is there? It is interesting, because I think, I don't know when the state would admit it, but I think there was an in-court statement on the law in their briefing. But at the end of the day, she still has options. And I don't know. I think what you're asking for is a rule. We have to go a little bit further and basically require or mandate some kind of process or magic words. Or I have considered these four things. And I'm not sure that we can do that. I'm also not sure that would be consistent with, is it the Ninth Circuit that I thought had rejected that? That approach, perhaps? In the line of Plyler? Maybe I'm wrong about that. But I've just, it seems like that's the rule you want. I'm really struggling with adopting that rule. I think you're correct on the Ninth Circuit point. Robbins misreads Plyler, I might believe. We can go into that if you'd like. But the rule you're describing is what the court would have to do if it held for my client on ground one of the three-part brief we submitted. But the other two are narrower. The other two just say, in this case, under the specific facts of this case, the district court was misinformed about the law. Even if it didn't have to consider these options. What does misinformed mean? There was an incorrect statement of the law. Well, that's different than being misinformed. It sounds like the party told you the wrong argument. You're saying it was wrong. It was misinformed. It was wrong. The party made a wrong argument. It sounded like it was misinformed. Wouldn't it be better just to let the Supreme Court decide this since it kind of sloughed it out and said they weren't going to make a requirement? You take this on to the next level and see if they'll say it's a requirement for the district courts to do this, to stay. Well, we could. But like I'm trying to say, I think there are narrower grounds here that this court can hold for the client. Specifically, ground two and ground three. Under ground two, we say the state made a wrong statement of the law. The district court, even if it didn't have to consider these alternatives, certainly had discretion to do so. Nobody disputes that. And the state undermined that discretion by telling the court it had to dismiss. So that's ground two. Or ground three, Mr. McBride explicitly raised his rinds, and then his clock runs out. And you don't even have to calculate the statute of limitations for him to know that because he's been in federal court for two years by the time it's decided. And you say he raised rinds. The district court should have addressed it, should have addressed his request for a stay. And if it determined it was inappropriate, it should have granted him the opportunity to delete here. I guess the Ninth Circuit, I guess we can quote about the Ninth Circuit, but why did the Ninth Circuit and Plyler are wrong? In other words, Plyler is a quite helpful case to the results here. The state may have, I think, no party side in it. But certainly we can assume the judge was on notice of the case. So we have to look at what the judge did in the context of Plyler so we can consider Plyler correct. That's correct. So why? I mean, that case pretty clearly says that the judge doesn't have to be an advocate, doesn't have to advise the defendant based on all of its rights in the habeas context. And it's certainly great if they do that. I don't want to pull over their eyes, but I don't—why is a reversible error to not do it? So Plyler just says you don't have to act as counsel. Plyler, if you read the whole name of the case, it's that you don't have to give these two warnings when you're walking through these habeas proceedings. And the way that Robbins, the Ninth Circuit case, gets Plyler wrong is it says, well, if you have to consider these options, then you've got to tell the petitioner so the petitioner can submit information that enables you to evaluate these options. That's just not correct. You can evaluate the options despite the petitioner's failure to submit briefing under Rinds. And Plyler's application to this case is just not that obvious. I mean, Rinds was decided one year after Plyler. It didn't cite Plyler at all. This Court has never cited Plyler in interpreting Rinds. So Plyler just doesn't bear in this case. We're not asking the district court to advise history of bribes to do anything. We're only asking the district court to choose among options for disposing of mixed petitions that both is in accord with Edpus goals, which is to streamline federal habeas proceedings and promote the value of state court judgment, and to not unreasonably impair the right to habeas relief. Okay. Thank you, counsel. And you'll have your formal vote on. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Autumn Bruce on behalf of the Respondent. While it's not disputed that the district court had four options available to it when faced with a mixed petition, the best option ultimately comes down to the petitioner. Do you agree, though, that you misinformed the district court? I would agree that quoting specifically to Lundy in that case and not then quoting to Rinds as an additional would have been an error, but I still think when you apply Rinds … It was a mistake, or what? I mean, it seems odd that you wouldn't have. I mean, Rinds is out there. I don't know what … I mean, it seems intentional to me. Is it not intentional to try to mislead her into dismissing the case? I can't believe that it was intentional. We've read these briefs every day, and Rinds is included in them. I think it was merely a mistake. At the same time, even if it … It seems odd. I assume you guys get these cases all the time. There are four options. Everybody knows that. I mean, that kind of cuts against his argument, I think, because, again, as I said before, a judge surely knows the law. It just seems odd that you would put that statement in the brief. I mean, I guess it doesn't say, but it just seems odd to me. I don't disagree. It does seem odd, Your Honor. I would note, though, that even under Rinds, that the argument still stands that the court had to dismiss in this case because if you look at the options, the petitioner never put forth an argument for a stay or to even amend his petition. Neither of those were ever put forth. So even if we presume that Judge Hood did look at all four options … Well, she … He didn't make the argument. He didn't make an opposition to the exhaustion. He didn't argue for any of the other options, obviously. He just argued that it was … that it had been exhausting, right? So she could … she had the option, I assume, to suit his lawsuit, pick one of the other options, right? Correct, Your Honor. She had … she could have if she believed that this case met those limited circumstances that are set forth in Rinds. But this case does not meet those circumstances. There was no good cause presented. There was no argument that was potentially a meritorious argument. I do think that at the time it was dismissed, he had an argument that he wasn't intentionally delaying the case in any way. But you still have to have all three of those factors. What about … okay, so that's a stay and abeyance option. What about deleting the unexhausted claim? I think what's interesting about that factor is that in Rinds, the court specifically cited to the fact that the petitioner always has the right to amend the petition to delete an unexhausted claim. But in the factors, it basically sets forth that the court can direct that if it's not going to unreasonably impair its ability to continue going after its federal rights. So I think there's a distinction there between the petitioner always has this option and can do that at any time. But if you meet these very limited circumstances, then the court can actually direct it. And so I think that's the difference, is that it's the difference between the court directing it or the petitioner choosing to do so. But is there – I guess your argument is there were – is this where the three months comes in? I mean, he could have done it on his own. Yes, Your Honor. Yes, he had three months to have this. So it's not an unreasonable impairment where you still have time to file? Right. Yeah. I mean, especially if you look at – One day? Like what? What is it? A week? Two weeks? Like what? Well, and I think Rinds has instructed – We don't have over three months. It's clearly not a day. I mean, what? When Rinds looks at Zarbella and they say, look, 30 days is appropriate, the fact remains that the petitioner in this case had three times that left. And the Supreme Court says 30 days is enough to go back to the state court. He had three months, which is three times what the Supreme Court has said that that's reasonable. So I think at that point in time you have that argument that, you know, he has ample amount of time. It's not going to unreasonably impair him. Plus, if he does go back to the state court, that's going to toll his statute of limitations. And he could have done that concurrently. He chose not to. As of last week, he still has not filed a motion for relief from judgment to exhaust this claim. So even if he wants this court to stay and go back so he can exhaust it, he still hasn't. It's been three years. He chose not to. So while he was very good about diligently pursuing his rights to begin with, the fact of the matter is it's been three years and he still hasn't. So if that's what he wants is to go back to be able to exhaust this claim, you haven't done that. If you want to go back to be able to amend your petition, you always could have. You chose not to. You were never denied from it. The court just chose not to direct you to do that. Could he have filed his claim with the state court and then gone back to the federal district court and say, this is a bad issue. Why don't I go through the state? Was that possible or has it been done now? Had he done it within three months of the dismissal, he could have. It was a reconsideration that was then after the statute of limitations. He had three months after the case was initially dismissed that was left in the statute of limitations. So to follow up if I didn't quite understand the question, if the case is dismissed, he goes back to exhaust the third claim. If he does that within 90 days, he can file a petition with all three of them. Correct. It's going to be quite hard to do it in 90 days. If he misses the 90 days, he's done. Well, he doesn't have to necessarily refile it within the 90 days. He needs to file a motion for relief of judgment in order to sustain or in order to toll the statute of limitations. He only needs to return to the state court within 90 days. And then whatever time is remaining after he's done, return to the federal court without knowing how much time. And he could at that point in time then request or file a protective petition and request a stay at that time, indicating that this is currently pending in the state court. A protective petition saying, what, here's my two valid claims and I have a third one that's hanging out there, but at least take these two? Or what does the protective petition say? I believe that's what the – I don't have a case off the top of my head, but I believe that's basically what the Supreme Court has said. It said you have the ability to file a protective petition that is a mixed petition with a request to stay at that time because you are exhausting these claims. There's no – it's the court for answers. It's the court for answers. The court for answers doesn't correct it. And then I think it then turns to whether he wants to dismiss it or not. It's still a mixed petition. I haven't seen a case that I guess would interpret that. But that particular set of circumstances actually occurred. So I just want to go back to Judge O'Banion's point. It was unfortunate the way you argued the case. And I'll ask this to your colleague or maybe your colleague on the side can also answer this too, but is there any indication the judge relied on your misstatement? Well, and that's what I think is interesting is that the petitioner points to the fact that she didn't quote Ryan, so therefore she must not have looked at it. But the fact also remains she doesn't say that it was an automatic dismissal and she doesn't quote to Lundy either. So I think because of the fact that prior to this dismissal, she has 40 other pieces in which she has mentioned Ryan's, that she does presume to know that Ryan's is out there. She knows that she has these options. And as you mentioned, she looked at these four options. This is the only one that's been asked for. It's the only one that's been argued for. So I don't have anything else. I don't even need to address them because they were never even asked for. They weren't argued for. Why do I need to address them if they were never part of this record and I have nothing to support them? I don't think it was an abuse of discretion for her to do that. She still had to dismiss because that was the best option in this case. That still had some benefit to the petitioner. She could have dismissed on the merits as well, but there was no merits argument made. Ultimately, Your Honors, this falls on her discretion. As Judge Delvanian mentioned, Ryan does not make this mandatory to where the court has to explicitly read the crimes or has to consider abstaining or has to direct the petitioner to do so. Ultimately, the burden was on the petitioner to show that he was entitled to abstain. He never requested one. He never provided an argument for it. He still hasn't shown that he had good cause. And so I think that the best option for this case was the dismissal without prejudice and I would ask that this Court affirm that decision. Thank you. Thank you. Thank you. Rebuttal. Thank you, Your Honors. I will start with the three months in Ryan's. The three months in Ryan's, I think, was, I'm sorry, the two months at issue in Ryan's was a CEG site to a Second Circuit case, but if you look at the district court order that was actually at issue in Ryan's, it was 120 days that the court affirmed. So I don't, nobody can read Ryan's as saying, like, 60 days is it for when your claim is in jeopardy or near the end of this statute of limitations period. And the other point I want to emphasize is that if we agree with you, we would be saying 90 days is not enough, right? Ultimately, as we say in our brief, it's really up to the district court to say, like, is your petition in jeopardy or not? We're reversing. Are we saying that? What we're saying, what you're saying if you're reversing is you should have, you should have considered this. You should have considered whether it was in jeopardy. You should have considered, if so, whether to grant this sort of, these sorts of alternatives. Oh, so not error to not, to delete, to not delete the unexhausted claim. It was error not to consider that option. Yes, that's right. And the other point I really want to emphasize is that you don't, you don't need a rule to decide this case. You could land on a rule under Ground 1. But even under Ground 3, we keep talking about what Mr. McBride could have done as soon as the district court dismissed his claim. And what he did do, pro se, 11 days later, is cite an attached wrongs, which liberally construed as a motion for a stay. And the district court totally ignored that request. And when the district court finally did, it's a post-judgment motion. I don't know, a stay, I mean, after the fact, after you've already lost, I mean, would there be any limit to that? If she denies that and then you say, well, consider the other option, or consider this one, or do this. I mean, it's a judgment. She's made her judgment. She's made her judgment on exhaustion. And Mr. McBride has seen, like, okay, there's an exhaustion problem. And he immediately raises rinds, which has – Does he use the word stay? Does he ever use the word stay? He uses the word stay in quoting rinds. Yes. He quotes the head notes for rinds. Yeah, he doesn't ask for it. I mean, I realize it's pro se. But it's not a formal request for a stay. It's not a formal request. I'm just asking the district court to do a lot of work here in terms of interpretation. I respectfully disagree. I think the court would say, you've raised rinds. I see what the options here are. I do or don't consider them to be appropriate in this case. So, not like denying the motion. Denying the motion was enough. I'd expressly articulate why I was denying the motion on this state round that was supposed to interpret from the head note. Yes. And at the very least – I mean, you mentioned one case name. Now I do 30 pages of work that you're not doing. I mean, that seems – I mean, look, we have a duty to do some of that sometime. I understand that. But, I mean, here, I don't – he could have raised it – I mean, why not raise it then if he knew? Why not raise it in response to their motion? It sounds to me like he really thought that it would be an exhaustion. That's what he wanted to go with. And then he loses. He says, oh, wait, I want to go with door number two. But that approach, that very approach, has sufficed already in several Sixth Circuit cases. And the Sixth Circuit hasn't been bad at denying, saying, okay, now we've found an exhaustion issue. What do we do? The petitioner didn't raise the stay until his pro-stay reply brief in the Sixth Circuit. Didn't raise the stay until oral argument in the Sixth Circuit. Didn't raise the stay at all. And the Sixth Circuit still says, rises the governing framework. In this case, his petition was dismissed after his time – I mean, the reconsideration was denied after his time. Expired, indisputably. And he still wasn't offered an opportunity to delete. So at the very least, what we would request is that this court send you out. I'd like to ask your friend on the other side. So the misinformation or misleading notion, to me, matters only if the judge buys it or is influenced by it. So your best argument that the district judge was misled by the state's argument is that it didn't cite – it didn't track the state's argument, but it didn't cite rights. That's the evidence that it was misled. I think the evidence that it was misled was that if you read the very last paragraph before the conclusion of the state, of the court's brief, it just says, you're right, there is an unexhausted claim here. And your motion's correct. Like, it follows as a matter of course. Which is what the state's brief said should have it. Under Lundy, there's an unexhausted claim. Dismissal follows as a matter of course. In the district court's order, there's an unexhausted claim. Dismissal follows as a matter of course. I think that's all the evidence that we have in this record. Great. Thank you. Thank you very much. The case will be submitted. And Mr. Moranga, you were, I think, appointed for sentencing to the Criminal Justice Act. Yes, Your Honor. So we thank you very much for your briefing and your argument. And we appreciate you participating in our program. Thank you very much. Thank you, both sides, for your arguments and briefs. And we'll take the case under submission and we can call the next case.